## UNITED STATES v. PAYNE and others.

*(District Court, D. Kansas.    December 11, 1884.)*

1. CONSPIRACY TO COMMIT OFFENSE AGAINST THE UNITED STATES—SETTLEMENT ON AND RETURN TO INDIAN COUNTRY.

A conspiracy to make settlement on Indian lands and to return to the Indian country, after being removed therefrom, is not an indictable offense, within the meaning of the conspiracy clause of chapter 8, Supp. Rev. St. 484, or one that can be prosecuted by criminal proceedings.

2. SAME—PENALTY, HOW RECOVERED.

The proper proceeding in such a case is by action under Rev. St. § 2124, to recover the penalty prescribed for such offenses.

On Motion to Quash Indictment.

*J. R. Hallowell,* U. S. Atty., for the United States.

*J. W. McDonald,* for defendants.

FOSTER, J.  The indictment in this case charges the defendants with conspiring and confederating together to commit an offense against the United States under chapter 8, Supp. Rev. St. 484.  The offense alleged, in brief, is that the defendants conspired and confederated together among themselves and with other persons to enter upon and make settlement on certain lands belonging, secured, and granted by treaty of the United States to certain Indian tribes, and lying between the Canadian and north fork of the Canadian rivers, in the Indian Territory, and commonly known as the Oklahoma lands.  And also having, before that time, been removed from the Indian country by the military forces of the United States, did conspire and confederate together, and with other persons, to return to said Indian country commonly known as the Oklahoma country, and also to enter upon lands known as the Cherokee strip or outlet in said Indian country; and charging defendants with certain overt acts to effect the object of said conspiracy, etc.

The law concerning the entering and making settlement on Indian lands is found in section 2118, Rev. St. p. 370, tit. 38, and reads as follows:

"Every person who makes a settlement on any lands belonging, secured, or granted by treaty with the United States to any Indian tribe, or surveys or attempts to survey such lands, or to designate any of the boundaries by marking trees, or otherwise, is liable to a penalty of one thousand dollars. The president may, moreover, take such measures and employ such military force as he may judge necessary to remove any such person from the lands."

The law concerning the removal of persons from the Indian country further provides as follows:

"Sec. 2147. The superintendent of Indian affairs and the Indian agents and subagents shall have authority to remove from the Indian country all persons found therein contrary to law, and the president is authorized to direct the military force to be employed in such removal.

"Sec. 2148. If any person who has been removed from the Indian country shall thereafter at any time return or be found within the Indian country, he shall be liable to a penalty of one thousand dollars."

It will be observed that the law fixes a penalty of $1,000 in either case, and section 2124 defines how this penalty shall be enforced. It reads as follows:

"All penalties which shall accrue under this title shall be sued for and recovered in an action in the nature of an action of debt, in the name of the United States, before any court having jurisdiction of the same in any state or territory in which the defendant shall be arrested or found, the one-half to the use of the informer and the other half to the use of the United States, except when the prosecution shall be first instituted on behalf of the United States, in which case the whole shall be to their use."

The act to accomplish which this conspiracy was formed, *i. e.*, to make settlement on Indian lands, and to return to the Indian country after being removed therefrom, might be termed an offense against the United States, but it is evidently not an indictable offense, nor could it be prosecuted by criminal proceedings. It is an offense created by statute, with a definite penalty attached, and the mode prescribed for enforcing the penalty. The prosecution may be instituted by an informer, and thus become a *qui tam* action. We find all through the acts of congress a distinction made between prosecutions for crimes and offenses, and suits for penalties and forfeitures. Thus, in defining the jurisdiction of the district court, (Rev. St. § 563,) after defining its jurisdiction of crimes and offenses, it reads as follows: "*Third,* of all suits for penalties and forfeitures incurred under any law of the United States." Again, in defining the jurisdiction of the circuit court, (Rev. St. § 629,) subdivision 20 gives the circuit court jurisdiction with the district court of crimes and offenses, etc.; but in subdivision 4 of the same section, defining suits of which the court shall have jurisdiction, it expressly excepts from the circuit court jurisdiction of suits for penalties and forfeitures.

In section 711, defining the general jurisdiction of the United States courts, this distinction is again observed. Section 732 provides where such suits may be brought. Section 1047 prescribes the period of limitation in such suits. There are various penalties prescribed for violations of the internal revenue and navigation laws, and sections 3213 and 4234 appertain to those subjects. From these several provisions of the statutes I am of the opinion that the acts charged do not show a conspiracy to commit an offense against the United States within the meaning of the conspiracy clause of chapter 8, Supp. Rev. St., and for this reason these indictments must be quashed.